IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Latisha M. Sanders, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-06526(CBA)(SJB) |
| | ) | |
| -against- | ) | |
| | ) | |
| The City of New York, The State of | ) | |
| New York, The United States, | ) | |
| Fairhaven Memorial Chapel, Dr. | ) | |
| Aglae Charlot, Chief Ms. Hammer, | ) | |
| LiveOn New York, Correction | ) | |
| Officer Morris, Brookdale University | ) | |
| Hospital, Margaret Chin, 67th | ) | |
| Precinct, New York | ) | |
| PoliceDepartment | ) | |
| Defendants. | ) | |

## LiveOnNY's Memorandum of Law
## In Further Support of its Motion for Summary Judgment

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendant LiveOnNY
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
Judy.Selmeci@WilsonElser.com
File No. 12946.00010 1049

Of counsel:
Judy C. Selmeci (JS 3915)
Jennifer S. Cooperman (JSC1695)

# Table of Contents

**Page**

Preliminary Statement .................................................................................................1

Argument on Reply ......................................................................................................1

    Point I         Plaintiff's 56.1 Statement and Response to Defendant's 561. Statement are Flawed ................................................................1

    Point II       The Federal, Procedural Summary Judgment Standard Applies (and Not New York's) ..............................................................2

    Point III     The Evidence Proffered by LiveOnNY in Support of its Underlying Motion is Proper and Must be Considered .............6

    Point IV    Plaintiff Herself Proffers No Probative Evidence, and Her Unsubstantiated Claims Must be Disregarded ...........................8

    Point V      Summary Judgment Must be Granted ......................................11

             ---     LiveOnNY Can Only Be Held Liable for the Actions of LiveOnNY, Not for the Actions of (Former) Co-Defendants .....................................................................11

             ---     LiveOnNY Did not Have Possession of the Body, and Therefore Could Not Have Interfered with Plaintiff's Right of Sepulcher ..........................................................12

             ---     Plaintiff's Argument That LiveOnNY Performed Organ and/or Tissue Recovery is Unsupportable as No Recovery Was Performed, and Even If It had been, Organ and Tissue Recovery Do Not Constitute Loss of Sepulcher ......................................................................13

             ---     LiveOnNY Acted In Good Faith Under Article 43, and Immunity from Liability Pursuant to N.Y. Pub. H. Law §4306 Applies ................................................................15

             ---     LiveOnNY Policies Are Not At Issue ...........................16

Conclusion ................................................................................................................19

# Table of Authorities

**Page(s)**

## Cases

*Allianz Ins. Co. v. Lerner*,
 416 F.3d 109 (2d Cir. 2005) ..................................................................................2

*Anderson v. Liberty Lobby*
 477 U.S. 242 (1986) ...........................................................................................3

*Brady v. Town of Colchester*
 863 F.2d 205 (2d Cir. 1988) ..................................................................................2

*Celotex Corp. v. Catrett*
 477 U.S. 317 (1986) ............................................................................... 4, 6, 9, 10

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*
 444 F.3d 158 (2d Cir. 2006) ..................................................................................3

*Contemporary Mission, Inc. v. U.S. Postal Serv.*
 648 F.2d 97 (2d Cir. 1981) ..................................................................................11

*Erie R.R. Co. v. Tompkins*,
 304 U.S. 64 (1938) ..............................................................................................2

*Feis v. United States*
 394 F.App'x 797 (2d. Cir. 2010)..............................................................................4

*Fox v. Mark*
 181 A.D.3d 560 (2d Dep't 2020) ................................................................... 13, 17

*Gatling v. Atl. Richfield Co.*
 577 F.2d 185 (2d Cir. 1978) ..................................................................................14

*Goenaga v. March of Dimes Birth Defects Found.*
 51 F.3d 14 (2d Cir. 1995) .......................................................................................4

*Khalil-Mirhom v. Kmart Corp.*
 12-CV-5512, 2014 WL 173415 (Ross, A. U.S.D.J., E.D.N.Y., Jan. 13,
 2014)...................................................................................................................2

*Kwan v. Andalex Grp.*
 737 F.3d 834 (2d Cir.2013) ...................................................................................3

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ...................................................................................1

*Mauro v. Costco Wholesale Corp.*
   09-CV-1391, 2013 U.S. Dist. LEXIS 102212 (Pohorelsky, V., U.S.M.J.,
   E.D.N.Y. July 22, 2013) .......................................................................................2

*Mayes v. United States*
   790 F.App'x 338 (2d Cir. 2020) ..........................................................................19

*McCarthy v. Dun & Bradstreet Corp.*
   482 F.3d 184 (2d Cir. 2007) ..................................................................................5

*Miner v. Clinton Cnty.*
   541 F.3d 464 (2d Cir. 2008) ..................................................................................4

*Neely v. St. Paul Fire & Marine Ins.*
   584 F.2d 341 (9th Cir. 1978) ...............................................................................11

*Nicoletta v. Rochester Eye & Human Parts Bank, Inc.*
   136 Misc.2d 1065 (Parenti, C., J.S.C., Sup. Ct, Wayne County, September
   18, 1987) ..............................................................................................................16

*Ross v. New Canaan Envtl. Comm'n*
   532 F.App'x 12 (2d Cir. 2013) ..............................................................................4

*Shipley v. City of N.Y.*
   25 N.Y.3d 645 (2015) ..........................................................................................15

*Simoes v. Target Corp.*
   11-CV-2032, 2013 U.S.Dist.LEXIS 83896 (Hurley, D., U.S.D.J.,
   E.D.N.Y., June 14, 2013) ......................................................................................3

*Tenay v. Culinary Teachers Ass'n of Hyde Park*
   281 F.App'x 11 (2d Cir. 2008) ..............................................................................2

*United States v. Rem*
   38 F.3d 634 (2d Cir. 1994) ....................................................................................4

**Statutes**

28 U.S.C.S. § 1746 ....................................................................................................6

11427651v.5

28 U.S.C.S. § 1746(2) ...........................................................................................6, 7

**Rules**

Fed. R. Civ. P. 56 ................................................................................ 2, 3, 6, 9, 19

Fed. R. Civ. P. 56(c)...........................................................................................6, 9

Fed. R. Civ. P. 56(c)(4).........................................................................................6

Fed. R. Civ. P. 56(e)(2)..........................................................................................9

N.Y. Pub. H. Law § 4306................................................................................. 15, 16

N.Y. Pub. H. Law § 4351(2)..................................................................................15

N.Y. Pub. H. Law Article 43 ........................................................................... 15, 16

11427651v.5

## Preliminary Statement

The plaintiff's opposition contains no facts beyond mere conjecture which could support her claims against the defendant, LiveOnNY. Further, none of the documentation upon which she relies provides factual support for her claims. In fact, the very documentation submitted by the plaintiff shows that the decedent's organs had *not* been recovered for donation, and that LiveOnNY never had possession or control of the decedent's body such that it could or would interfere with the plaintiff's right of sepulcher.

## Argument on Reply

### Point I    Plaintiff's 56.1 Statement and Response to Defendant's 561. Statement are Flawed

This court should disregard plaintiff's 56.1 statement and her response to LiveOnNY's 56.1 statement because they fail to set out "specific facts showing a genuine issue for trial." The statements are deficient because they: a) proffer conclusory allegations without bases and lack citations to probative evidence; b) are contradicted by the evidentiary record, including plaintiff's own deposition testimony; and, c) proffer information that is irrelevant or taken out of context. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008) (holding that the non-movant must proffer admissible, specific, and genuinely disputed material facts instead of conclusory or speculative assertions in order to overcome the motion).

1

**Point II     The Federal, Procedural Summary Judgment
            Standard Applies (and Not New York's)**

The plaintiff's argument in opposition to LiveOnNY's motion erroneously

relies on the New York State court summary judgment standard (which is different

than the standard applied in these federal courts).

Although the case involves substantive New York law (concerning the

elements of the remaining claim of loss of sepulcher), federal procedural law

applies to the procedural issue of the parties' burden on summary judgment. *Erie*

*R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that federal courts apply federal

procedural standards to state law issues they adjudicate); *Allianz Ins. Co. v. Lerner*,

416 F.3d 109 (2d Cir. 2005) (applying the *Erie* doctrine in the Second Circuit);

*Khalil-Mirhom v. Kmart Corp.*, 12-CV-5512, 2014 WL 173415, at *3 (Ross, A.

U.S.D.J., E.D.N.Y., Jan. 13, 2014) (holding that "[a]lthough New York substantive

law governs plaintiff's … action, federal procedural law provides the standard for

summary judgment") (citations omitted).

Specifically, "the evidentiary burdens that the respective parties will bear at

trial guide district courts in their determination of summary judgment motions,"

which, in federal court, are governed by Federal Rule of Civil Procedure 56 rather

than state procedural law. *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281

F.App'x 11, 13 (2d Cir. 2008) (summary order) (quoting *Brady v. Town of*

*Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)); *see also, Mauro v. Costco*

2

*Wholesale Corp.*, 09-CV-1391, 2013 U.S. Dist. LEXIS 102212, at \*6 (Pohorelsky,

V., U.S.M.J., E.D.N.Y. July 22, 2013) (holding that "to the legal issues raised by

the motion, the substantive law of New York applies, but federal law governs

procedural issues, including the standards on summary judgment under Federal

Rule of Civil Procedure 56.")

Given this standard, summary judgment is proper when, construing the

evidence in the light most favorable to the nonmovant, "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a); *Kwan v. Andalex Grp.*, 737 F.3d 834, 843 (2d Cir.2013). The

role of the court is not "to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park*

*Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (internal citation

omitted). A genuine issue of fact exists only when there is sufficient "evidence on

which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*,

477 U.S. 242, 252 (1986).

Whereas the New York State summary judgment standard requires the

moving party to put forth evidence in support of its motion for summary judgment

(that is, to "make a prima facie showing,") the federal standard does not require

this. . *Simoes v. Target Corp.*, 11-CV-2032, 2013 U.S.Dist.LEXIS 83896 (Hurley,

D., U.S.D.J., E.D.N.Y., June 14, 2013) Specifically, under federal law, "the burden

on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) or even "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim" *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995);see also *Feis v. United States*, 394 F.App'x 797, 798 (2d. Cir. 2010) (holding that, in a case governed by New York law, defendant "was not required to affirmatively disprove each element of plaintiff's claim," but could satisfy burden of proof by pointing to lack of evidence on an essential element); *Ross v. New Canaan Envtl. Comm'n*, 532 F.App'x 12, 12-13 (2d Cir. 2013) (summary order).

Further, "[w]hen the moving party has pointed to the absence of evidence to support an essential element on which the party opposing summary judgment has the burden of proof, the opposing party, in order to avoid summary judgment, must show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." *United States v. Rem,* 38 F.3d 634, 643 (2d Cir. 1994); *see also, Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (holding that "[u]nless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful, summary judgment is granted to the

4

moving party") (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

Here, there is no evidence to support the plaintiff's contentions that LiveOnNY had possession and control of plaintiff's decedent's remains to in any way effect, influence, or otherwise have any power over plaintiff's right of sepulcher. Rather, the evidence shows that LiveOnNY lacked such possession and control and is, as a result, not liable. This were true, even if New York's burden-shifting standard applied.

The evidence shows that LiveOnNY did not and could not have interfered with the plaintiff's possession or (or access to) the decedent's body, as LiveOnNY never possessed the body. The body was in the possession and control of the (former co-defendant) hospital and the (former co-defendant) ME (and, possibly, the (former co-defendant) police), none of whom were, are, or have ever been controlled by LiveOnNY. As such, LiveOnNY could not have directed any of those entities in any way on the matter of permitting or denying access to the decedent's body, and thereby could not have effected plaintiff's right of sepulcher.

Further, there is no evidence that LiveOnNY recovered any organs or tissues from the decedent. In fact, the evidence clearly shows that LiveOnNY abandoned the possibility of donation after it was unable to identify next of kin to request authorization to recover tissues and that LiveOnNY never proceeded with any

5

other activities in the case, certainly including performance of any organ or tissue recovery.

The absence of such evidence is proof positive that LiveOnNY in no way interfered with plaintiff's right of sepulcher. The plaintiff's theories to the contrary are supported by supposition and conjecture, which cannot sustain a cause of action in any court.

**Point III     The Evidence Proffered by LiveOnNY in Support of its Underlying Motion is Proper and Must be Considered**

Materials that may be submitted for the court's consideration in support of summary judgment under Rule 56 include pleadings, depositions, answers to interrogatories, admissions, certified records, and any affidavits. Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323. All of the materials Rule 56 allows must be presented under oath or otherwise certified. A declaration instead of a notarized affidavit is acceptable provided the declaration is signed under penalty of perjury. 28 U.S.C.S. § 1746; Fed. R. Civ. P. 56(c)(4); Fed. R. Civ. P. 56(c) advisory committee's notes to 2010 amendment (same). The declaration should be signed with the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C.S. § 1746(2). An undated declaration may be stricken as noncompliant with 28 U.S.C.S. § 1746. The oath, and the penalty of perjury which gives the oath its true

6

power, gives the Court strong reason to believe that the materials supporting the motion or the opposition are authentic.

Contrary to the plaintiff's assertions that LiveOnNY's submitted evidence is improper hearsay, LiveOnNY properly authenticated the evidence it proffered by presenting the LiveOnNY records and calls with declarations of persons with knowledge, specifically Georges DeVastey and Michelle Clayton Lucas, sworn under oath and penalty of perjury pursuant to 28 U.S.C.S. § 1746(2). The declarations of both Mr. DeVastey and Ms. Clayton Lucas contain the requisite language as required under 28 U.S.C.S. § 1746(2), and are properly dated. See Exhibits "D" and "E' to LiveOnNY's underlying motion.

Further, the declarations of Mr. DeVastey and Ms. Clayton Lucas are in no way improper as they do not create any material issue relative to prior deposition testimony or contradict objective evidence. Rather, the declarations simply fulfill their purpose under 28 U.S.C.S. § 1746(2) to declare the propriety and authenticity of the documents and call recordings that were kept as business records by LiveOnNY, in support of its motion for summary judgment.

Further, the records of former co-defendants Brookdale University Medical Center and the ME, annexed as exhibits to plaintiff's verified complaint, were previously deemed authentic for the purposes of motion practice. Specifically, in response to letter motions by LiveOnNY, on November 18, 2020, Judge Bulsara

7

ordered that "the documents [annexed as exhibits to the verified complaint] are deemed authentic and LiveOn[NY] may rely upon them for the purposes of its summary judgment motion." Therefore, having already been deemed authentic for purposes of motion practice, these documents are properly offered as evidence in support of LiveOnNY' motion for summary judgment

Finally, the deposition transcripts relied upon by LiveOnNY in support of its motion for summary judgment were taken under oath, and were either executed by the deponent or execution was requested, and therefore the transcript is to be deemed as executed. Specifically, the transcript of the deposition of LiveOnNY witness Kristin Della Carpini was executed and notarized on October 20, 2020 (Exhibit "G" at p. 169). Morever, on May 11, 2020, your affirmant's office forwarded plaintiff's deposition transcript to her attention for execution (Exhibit "F" at p. 142). As such, all evidence presented with Defendant LiveOnNY's motion in chief is proper, and should be considered by this Court.

## Point IV     Plaintiff Herself Proffers No Probative Evidence, and Her Unsubstantiated Claims Must be Disregarded

In opposition to LiveOnNY's motion for summary judgment, the plaintiff offers no probative evidence to meet her burden of showing an issue of fact regarding the sole remaining cause of action of loss of right of sepulcher. Further, the arguments and "evidence" that the plaintiff purports to present in support of her position as to her claimed loss of right of sepulcher as against LiveOnNY is mere

conjecture and supposition. Since under Rule 56 the moving party need not "support its motion with affidavits or other similar materials negating the opponent's claim," the plaintiff's speculation does not overcome LiveOnNY's motion. *Celotex*, 477 U.S. at 323. A motion for summary judgment may be granted even without supporting documentation "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. If the moving party makes its motion properly, the burden shifts to the non-moving party, whose "response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unlike the moving party, the "opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." *Id*. The plaintiff here does not meet this burden.

The plaintiff's arguments against summary judgment are based on mere speculation and conjecture. As the LiveOnNY chart and the declaration in support of the main application establish, LiveOnNY did not dispatch staff to Brookdale Hospital. The plaintiff proffers no proof to the contrary. The plaintiff attempts to use deposition testimony of Brookdale witness Jose Maria to establish LiveOnNY's presence at the hospital but Mr. Maria testified that to his general belief that, once LiveOnNY is notified, it sends people to the hospital. He did not,

and could not, testify in any way to what LiveOnNY did in this case. As established in LiveOnNY's underlying motion papers, LiveOnNY did not dispatch anyone to the hospital in this case because next-of-kin was unable to be located and therefore, they could not request permission for tissue recovery (Carpini dep., Exhibit "G" at p. 135).

Further, in the plaintiff's opposition papers, she acknowledges that LiveOnNY personnel would only be dispatched once a deceased is determined to be a "suitable organ donor," which was also not the case here. As detailed in LiveOnNY's underlying motion papers, LiveOnNY was not notified of the death of decedent Cedric McEaddy until after 6:00 am, nearly 6 hours after his death, at which point he would not be a viable organ donor, and therefore could only ever be considered a potential tissue donor. However, since LiveOnNY was unable to identify and locate next-of-kin, no one from LiveOnNY was "dispatched" to the hospital (Carpini dep., Exhibit "G" at p. 135). Plaintiff has no evidence to the contrary.

Where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the "moving part is 'entitled to summary judgment as a matter of law.'" *Celotex*, 477 U.S. at 323.

Given the lack of proof in the plaintiff's opposition, LiveOnNY's motion for summary judgment must be granted. *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) (holding that "a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover.") Further, "[a]n opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of the motion. *Id.* at 1007, citing *Neely v. St. Paul Fire & Marine Ins.*, 584 F.2d 341, 344 (9th Cir. 1978).

## Point V        Summary Judgment Must be Granted

The plaintiff makes numerous references in her opposition papers to claims and issues not currently before this court. LiveOnNY previously filed a motion to dismiss which was granted as to all claims except plaintiff's claim for a loss of right of sepulcher. Therefore, any other claims made in the plaintiff's opposition or references to other claims contained therein must be disregarded as improper.

**---**    *LiveOnNY Can Only Be Held Liable for the Actions of LiveOnNY, Not for the Actions of (Former) Co-Defendants*

In her opposition, the plaintiff repeatedly alleges that LiveOnNY "together with former co-defendants" deprived her of her right of sepulcher. Significantly, the plaintiff makes these arguments as though LiveOnNY had any control over the former co-defendants (with whom the plaintiff settled this case prior to the

completion of discovery).  As the evidence shows, however, LiveOnNY is an organ procurement organizations ("OPO"), meaning that its role is to identify potential local organ and tissue donors, where donation is possible obtains authorization for the recovery, and (where consent is obtained) coordinates the recovery and allocation of the donations (DeVastey dec. ¶2).  LiveOnNY is neither an arm nor in any way affiliated with any of the former co-defendants. As a result, LiveOnNY does not have control over the former co-defendants and it cannot and would not control what they do with a body in their custody. (Carpini dep. as Exhibit "G" at pp. 117-118).

**---**    *LiveOnNY Did not Have Possession of the Body, and Therefore Could Not Have Interfered with Plaintiff's Right of Sepulcher*

LiveOnNY never dispatched personnel to the hospital, and never took possession of and never had control over the body. The body was in the possession and control of former co-defendants Brookdale, OCME and, possibly, the police. None of these entities are or have ever been controlled by LiveOnNY, and LiveOnNY did not and could not have directed any entity in any way on the matter of permitting or denying plaintiff's access to the decedent's body.

As a result, no theory of loss of sepulcher is supportable here. LiveOnNY did not have physical possession or control over the body. While the ME consented to LiveOnNY's request to hold off on transporting the body from the hospital to its own premises pending LiveOnNY's attempts to find the next of kin, this "hold"

did not negate the hospital's ongoing possession and control, nor did it prevent the hospital from allowing the plaintiff access to the decedent's body. Even if the police took control of the body at the hospital, LiveOnNY was still not involved, nor did this result in LiveOnNY coming to be in possession of the body.

In fact, in paragraph 9 of the plaintiff's own statement of facts, she acknowledges that LiveOnNY did not possess or control the body. Specifically, the plaintiff states that "the body was in the possession of Brookdale and OCME prior to being transported" to funeral home, Fairhaven Memorial Chapel.

It is clear from the evidence proffered in support of the underlying motion for summary judgment that LiveOnNY did not dispatch staff to the hospital and never once, not for any period of time, did it take possession of the decedent's body. As a consequence of this reality, and as a matter of law, it must be held that LiveOnNY "did not unlawfully interfere with the next of kin's right to the immediate possession of the decedent's body for preservation and burial" and that "[t]herefore, no cause of action to recover damages for loss of sepulcher lies." *Fox v. Mark*, 181 A.D.3d 560, 564 (2d Dep't 2020).

**---** *Plaintiff's Argument That LiveOnNY Performed Organ and/or Tissue Recovery is Unsupportable as No Recovery Was Performed, and Even If It had been, Organ and Tissue Recovery Do Not Constitute Loss of Sepulcher*

Although plaintiff continues to make unsubstantiated allegations that

LiveOnNY improperly recovered from her decedent organs or tissue, the evidence

13

is clear that LiveOnNY never had physical possession or even physical contact with the deceased's body, and as such, it could not perform any organ or tissue recovery. LiveOnNY received an administrative hold from the ME, which meant the ME would hold off on transporting the body from the hospital to the ME's facility while LiveOnNY attempted to locate next-of-kin to attempt to obtain permission for tissue recovery. LiveOnNY was unable to locate the deceased's next-of-kin, and as such, LiveOnNY's file was closed without any interaction with the deceased's physical body.

Further, the decedent's autopsy report, originally attached to the plaintiff's own complaint (and LiveOnNY's underlying motion with the complaint as Exhibit "A"), establishes that the organs and tissues were in the body during autopsy which occurred after LiveOnNY had administratively released the body back to the ME and closed its file. That the organs remained in the body is evident from the fact that the medical examiner made specific findings about them – which is to say they were there to be examined.

Where, as here, the facts do not support any of the plaintiff's theories, summary judgment must be granted. *Gatling v. Atl. Richfield Co.*, 577 F.2d 185, 188 (2d Cir. 1978) (granting the defendant's motion for summary judgment in view upon the plaintiff's failure to identify any factual disputes warranting trial).

Notably, even if a tissue or organ donation had occurred (and as detailed both in LiveOnNY's underlying motion and above, and pursuant to the evidence, none did) the plaintiff would not have a cause of action for the loss of sepulcher on account of it. *Shipley v. City of N.Y.*, 25 N.Y.3d 645, 653-4 (2015) (holding that "it is the act of depriving the next of kin of the body, and not the deprivation of organ or tissue samples within the body, that constitutes a violation of the right of sepulcher.")

--- *LiveOnNY Acted In Good Faith Under Article 43, and Immunity from Liability Pursuant to N.Y. Pub. H. Law §4306 Applies*

The plaintiff argues that LiveOnNY's application of N.Y. Pub. H. Law § 4306 is "insufficient on its face." However, N.Y. Pub. H. Law § 4306 is applicable in this case since "[LiveOnNY] act[ed] in good faith in accord with the terms of [PHL Article 43] or with the anatomical gift laws of another state [and is thus] not liable for damages in any civil action or subject to prosecution in any criminal proceeding for his or her act."

Pub. H. Law § 4351(2) charges OPO's, with the responsibility of determining "suitability" for donation. LiveOnNY acted according to its standard procedures in its attempts to locate next of kin by searching its databases and inquiring with the hospital upon their official reporting of the deceased whether they were aware of the identity of next-of-kin. LiveOnNY ultimately abandoned

15

the possibility of donation and closed its file when authorization could not be secured because there was no next of kin to ask for it. When LiveOnNY took time to try to find the next of kin (to, in turn, request authorization for transplant) and when it requested a "hold" on the ME's activities while its search for next of kin went on, LiveOnNY was carrying out its statutory duty under Article 43. Further, there is no evidence to support any contentions of malicious or ill motive in this regard, and where the entity acts in accordance with its duties under the statute, courts find that it acts in good faith. *See, Nicoletta v. Rochester Eye & Human Parts Bank, Inc.*, 136 Misc.2d 1065, 1066 (Parenti, C., J.S.C., Sup. Ct, Wayne County, September 18, 1987).

Here, LiveOnNY acted in utter good faith as evidenced by its conformity to the requirements of Article 43 obligations. The plaintiff has failed to provide any evidence whatsoever to the contrary. Therefore, the good faith immunity provision of § 4306 applies and LiveOnNY is immune from liability.

**---** *LiveOnNY Policies Are Not At Issue*

In her opposition, the plaintiff makes numerous allegations regarding LiveOnNY's alleged failure to comply with its own policies. LiveOnNY's policies are not at issue in this case and even if LiveOnNY had failed to comply with any of their requirements, that would not support the plaintiff's entitlement to relief, as none of the disputed policies had an effect whatsoever on plaintiff's right of

sepulcher and none created additional duties to the plaintiff. Specifically, the plaintiff alleges that LiveOnNY did not follow its own procedures in that it failed to provide proof of the search it conducted of its donor data bank. This is factually untrue since LiveOnNY's records show that the search was conducted and turned up empty (LONY005). In any event, LiveOnNY's review of the donor database in no way interfered with the plaintiff's right of sepulcher, and as such is irrelevant to the matters before this court. Certainly, this is not a case where the plaintiff could (or even tries) to make out any kind of assumed duty through the policies such that LiveOnNY would have owed her a duty of care to perform actions required by its internal policies. *Fox v. Mark*, 181 A.D.3d 560 (2d Dep't 2020).

The plaintiff also alleges that LiveOnNY departed from its own procedures by not creating a "donor form" in the chart. However, the decedent was not a first-person consented donor, and as such there is no documentation to be printed off the donor registry. And, in any event, this alleged omission had no impact on plaintiff's right of sepulcher.

The plaintiff next alleges that LiveOnNY did not show that it searched for next of kin and kept the hospital informed of the same, pursuant to its policies and procedures.  This claim too, is factually incorrect. The LiveOnNY records reflect that LiveOnNY asked the hospital and ME whether it had next of kin information (LiveOnNYCall2; LiveOnNYCall3; LONY003; LONY005; Devastey dec. ¶¶11,

15) and that it searched for next of kin through its own search tools (Devastey dec. ¶12, 15; LONY005). All searches were unsuccessful, which fact is also reflected in the chart (Devastey dec. ¶16-17; LONY005).  In any event, this policy is also irrelevant to the issues before this court; even if LiveOnNY had failed to perform any search for next-of-kin or give any update to the hospital, this would not have in any way interfered with the plaintiff's right of sepulcher, as LiveOnNY did not ever have possession of the decedent's body.

Finally, the plaintiff makes numerous allegations with regard to procedures concerning the hold LiveOnNY requested from the ME's office at approximately 6:00 am, and which was granted until 10:00 am. LiveOnNY's hold placed on the decedent was administrative in nature, and at no time included physical possession or any form of control of the body. As such, the policies and procedures surrounding that hold did not and could not have any effect whatsoever on the plaintiff's right of sepulcher. Although LiveOnNY did not call the ME until 7:42 pm to formally "release" the "hold," no prior extension of the hold had ever been given past 10:00 am and by 7:42 pm, when LiveOnNY called the ME, the ME had long proceeded with its own activities involving transfer of the body. (LONY005, DeVastey decl. 16, ME records, pg. 9 of 37). Therefore, whether LiveOnNY had contact the ME at 10:00 am when the hold expired or at any particular intervals is immaterial as it had no effect whatsoever on the ME, the ME's activities and, most

importantly, on the plaintiff's right of sepulcher, as LiveOnNY never had physical possession or control over the body. Further, as it is evident that for days after LiveOnNY's hold expired (regardless of whether that would have been at 10:00 am or 7:42 pm), the plaintiff did not gain possession of the decedent's body there is a complete lack of proximate causation between the hold and the plaintiff's claims. *Mayes v. United States*, 790 F.App'x 338 (2d Cir. 2020) (holding that absent evidence of proximate cause, summary judgment must be granted).

Given this proof as well as the proof offered in LiveOnNY's initial papers and given the absence of contrary proof in the plaintiff's opposition, summary judgment must be granted.

## Conclusion

For the foregoing reasons, it is respectfully requested that this Court grant summary judgment for LiveOnNY pursuant to Rule 56, together with such further relief as this Court deems appropriate.

Dated:  New York, New York
       January 13, 2021

                             Respectfully submitted,
                             WILSON, ELSER, MOSKOWITZ,
                             EDELMAN & DICKER LLP

By: _____

                             Judy C. Selmeci (JS3915)

11427651v.5

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NEW YORK

LATISHA M. SANDERS,

Plaintiff,

-against-

THE CITY OF NEW YORK, THE STATE OF YORK, THE UNITED STATES, FAIRHAVEN MEMORIAL CHAPEL, DR. AGLAE CHARLOT, CHIEF MS. HAMMER, LIVEON NEW YORK, CORRECTION OFFICER MORRIS, BROOKDALE UNIVERSITY HOSPITAL, MARGARET CHIN, 67TH PRECINCT, NEW YORK POLICE DEPARTMENT,

Defendants.

**LIVEONNY'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

*Attorneys For*   **Defendant LiveOnNY**

150 East 42nd Street
New York, NY  10017-5639
212.490.3000