IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Latisha M. Sanders,  )<br>  )<br>       Plaintiff,  )<br>  )<br>   -against-  )<br>  )<br>The City of New York, The State of  )<br>New York, The United States,  )<br>Fairhaven Memorial Chapel, Dr.  )<br>Aglae Charlot, Chief Ms. Hammer,  )<br>LiveOn New York, Correction  )<br>Officer Morris, Brookdale University  )<br>Hospital, Margaret Chin, 67th  )<br>Precinct, New York Police Department,  )<br>  )<br>      Defendants.  ) | Case No. 1:16-cv-06526(CBA)(SJB) |

**LiveOnNY'S Objections to the June 15, 2021 Report and Recommendation
of Magistrate Judge Sanket J. Bulsara**

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for Defendant LiveOnNY
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
Judy.Selmeci@WilsonElser.com
File No. 12946.00010 1049

Of counsel:
Judy C. Selmeci (JS 3915)
Jennifer S. Cooperman (JSC1695)

Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72.1, defendant LiveOnNY respectfully objects to the Report and Recommendation (PACER # 191, "the R&R") relating to LiveOnNY's motion for summary judgment (PACER 183) issued by the Honorable Sanket J. Bulsara, United States Magistrate Judge, on June 15, 2021, which recommends that this court deny LiveOnNY's motion for summary judgment as to the only remaining cause of action for loss of the right of sepulcher.

LiveOnNY respectfully submits that the R&R errs in recommending that the court deny the motion, by:

- Improperly acting as the finder of fact and failing to take into account the full and complete facts and instead considering parts of the facts without appreciating their totality and placing them in the full context of what occurred; and,

- Improperly applying the legal standard for a motion for summary judgment and loss of the right of sepulcher.

It is respectfully requested that this court reject the R&R and grant LiveOnNY's motion for summary judgment in its entirety.

## Introduction

The only remaining issue in this litigation relates to the question of whether LiveOnNY, an organ procurement organization, interfered with plaintiff's right of sepulcher. The R&R is recommending that this court deny LiveOnNY's motion for summary judgment on this issue because, according to the R&R, issues of fact exist. We submit that this would be in error.

The R&R mis-states the record as a consequence of an improper fact determination that is not supported by the record, all of which lead the R&R to conclude that a rational jury could find that LiveOnNY's administrative hold on the decedent's body in any way interfered with the plaintiff's right of access to the body. As set forth herein, the R&R's conclusions on this issue are improper and not supported by the record or prevailing case law.

2

**Standard of Review**

When a litigant objects to a magistrate judge's report and recommendation concerning a motion for summary judgment, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C) ("[T]he court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The district judge may then "accept, reject, or modify [in whole or in part] the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

Because the R&R incorrectly construes the facts in this case as applying to the administrative hold LiveOnNY obtained over the decedent's body and further improperly applies the prevailing case law regarding the right of sepulcher in recommending that this court deny LiveOnNY's motion for summary judgment, this court must reject the R&R together with the factual findings set forth therein, and grant LiveOnNY's motion for summary judgment.

**Argument**

A.  **The R&R Deviates From the Standards Governing the Disposition of Summary Judgment Motions in Rendering the Report and Recommendation by Improper Fact Finding**

Summary judgment can and should be granted "where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir. 2003); Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact exists that will preclude summary judgment only if the record contains evidence "susceptible of different interpretations"

or from which differing inferences may be drawn. *Hunt*, 526 U.S. at 553. A genuine issue of fact is created when submissions rely on ambiguous documents and information supplied by affiants whose credibility and personal knowledge is placed in issue by the opponent. *See Fire Burglary Instruments, Inc. v. Babcock Elecs. Corp.*, 1982 U.S. Dist. LEXIS 11414, *16 (S.D.N.Y. 1982).

A judge's sole function when ruling on a summary judgment motion is to determine whether the record is such that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. Making that determination requires adherence to several well-established principles. First, a judge engaging in an analysis of whether a genuine issue of material fact remains which would prohibit the entry of summary judgment is affirmatively obligated to believe the evidence of the non-movant and draw all inferences in that party's favor. *See Hunt*, 526 U.S. at 552; *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439-40 (2d Cir. 1999). A judge engaging in this analysis is prohibited from weighing the evidence, making credibility determinations, and drawing inferences from the facts. *See Anderson*, 477 U.S. at 249, 255 ("the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

In making this determination, only evidence that would be admissible at trial may be considered when ruling on a motion for summary judgment. *See POM Wonderful LLC v. Organic Juice USA, Inc.*, 769 F. Supp. 2d 188, 196 (S.D.N.Y. 2011). Evidence that a jury would not be required to believe, including testimony that is self-serving, implausible, or inconsistent with other evidence in the record, cannot be considered. *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 539 (S.D.N.Y. 2011). Nor can an evaluation of ambiguous acts be undertaken by a judge ruling on such a motion. *See Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998).

Evidence in the record that is inconclusive or contradictory is insufficient to establish a litigant's entitlement to judgment as a matter of law, as is testimony "unsupported by documentary or other concrete evidence." *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38 (2d Cir. 1986); *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 128-29 (S.D.N.Y. 2012).

In the instant matter, the R&R improperly applied undisputed facts, finding them instead to be disputed by considering portions of the facts presented rather than the totality of the facts as established by documentary evidence and witness testimony. Rejection of the R&R is warranted on this ground alone.

    a. <u>All of the Record Evidence Shows that LiveOnNY's Administrative Hold in No Way Interfered with Plaintiff's Right of Sepulcher. There is No Question of Fact in this Regard.</u>

The initial factual contention material to plaintiff's claim is whether LiveOnNY's administrative hold in any way interfered with her right to access the body. The Magistrate Judge concluded that, by virtue of placing the administrative hold on the decedent's body while LiveOnNY attempted to locate next of kin, LiveOnNY in some way prevented the plaintiff from having access to the body and in some way interfered with her right of sepulcher. This conclusion is incorrect and unsupported by the record. There is no evidence to support the premise that LiveOnNY's administrative hold could or would have interfered with the plaintiff's possession or control of the decedent's body in any way. Rather, all the evidence shows that LiveOnNY's administrative hold is simply not of that nature.

LiveOnNY's policies define the administrative hold as a means "to ensure that the deceased's body is maintained at the recovery site." (PACER 183, ex 8, page 1 of 3, ¶ 4.1). The hold does not prevent the family's access to the body "at the recovery site" (which is to say at the hospital morgue where the body is stored prior to transport to the ME).

5

LiveOnNY's witness, Christine Delli Carpini testified that the hold entails asking the ME "to please put a hold so that they do not pick up the body and proceed with their activities." (PACER 183, ex 8, pg. 29). Meanwhile, it is the plaintiff's claim that she was not permitted to see her son's body. (PACER 183, ex 2, ¶ 24). It is in fact the plaintiff's claim is that she was present at Brookdale Hospital in the early morning hours of May 19, 2016 (before LiveOnNY's hold was in place) and was not permitted inside to see the body. (PACER 183, ex 2, ¶ 24). It is the plaintiff's claim that she later also asked the ME to see the body and was not permitted to do so. (PACER 183, ex 2, ¶ 24). It is her claim that she did not get to see the body until after she retained a funeral home on May 25 to retrieve the body (PACER 183, ex 2, ¶ 36) and, upon its transfer, she was permitted to view the body at the funeral home on May 28. (Am. Compl. ¶ 38).

None of these denials of the plaintiff's request to see the body have anything to do with LiveOnNY's administrative hold on the transfer of the body from the hospital to the ME (which was only in place from 6:00 am to 10:00 am). LiveOnNY's witness testified to this fact when she stated that "our [meaning LiveOnNY's] policy is not to withhold access to the body, that is not the purpose of the hold." (PACER 183, ex 8, pg. 136). With respect to whether a hold will delay an autopsy (thus potentially delaying release of the body for burial), LiveOnNY's witness testified that the hold "does not interfere [with the ME's schedule] or we would not be putting these holds on." (PACER 183, ex 8, pg. 138).

Despite this unequivocal state of the record, the R&R contains a recommendation that this court deny LiveOnNY's summary judgment motion because LiveOnNY's "version of events is subject to material dispute, and its role is not as limited as it wishes or suggests." (R&R, p.19). The R&R contains this conclusion because of a misconception about LiveOnNY's deposition testimony and an erroneous conclusion (in blatant contradiction to the testimony itself) that

6

"Carpini's testimony explained the effect of a "hold": to prevent *any further action being taken with respect to the decedent's body*, including an autopsy or funeral." (R&R at pg. 20, emphasis added). But this is *not* the purpose of the hold and this is *not* what the testimony is. The testimony is that the hold, if and to the extent granted, prevents the body from being transferred. (PACER 183, ex 8, pg. 136). It does not prevent the family from viewing it or from making arrangements for its transfer or anything of the sort. (PACER 183, ex 8, pg. 119). It did not (on the 19th when the hold was in place) prevent the plaintiff from retaining a funeral home (which she did not do until the 25th) to retrieve the body and it did not prevent her from viewing the body in the interim. Whoever determined that she could not view the body it was not LiveOnNY and it was not because of LiveOnNY that that decision was made. (PACER 183, ex 8, pg. 119). There is no evidence to the contrary.

The R&R's recommendation that LiveOnNY's motion be denied on the triable possibility that LiveOnNY's administrative hold prevented the family from accessing the body must thus be denied.

   b. <u>The Record Shows that there was no "Hold" in Place after 10:00 am and until 7:42 pm because the Body was Transferred Before Then.</u>

The R&R also concludes (improperly) that it is possible that LiveOnNY's hold was in place from 6:00 am not until 10:00 am but until 7:42 pm, when LiveOnNY called the ME to "release" the hold. (R&R at pg. 19). But this is *not* how long the ME had granted the hold and the record is clear that it is not how long the hold was in place. In fact, the ME had granted LiveOnNY a hold only until 10:00 am, and by noon the hold was clearly no longer in effect because the ME was already beginning to arrange for the transfer of the body. (PACER 183, ex 2, ME records page 9). In fact, by 7:00 pm, the body was in the ME's custody. (PACER 183, ex

7

2, ME records page 9). Despite this reality, the R&R recommends to this court that it find that a triable issue remains over whether the hold was in place past 10:00 am. (R&R at pg. 19).

Of note, the fact that LiveOnNY may have *believed* its hold to be in place though 7:42 pm, when it called to "release" the hold is immaterial in this regard since the ME's records conclusively establish that no extension of the 10:00 am expiration of the hold was ever granted and, in fact, the ME proceeded with its activities when the hold expired. (PACER 183, ex 2, ME records page 9). So while the R&R in fact goes so far as to suggest that the "the hold may have prevented the OCME from taking any action with respect to McEaddy's body (including beginning the autopsy)" because, according to the R&R, the "testimony suggests" (R&R at pg. 21) this may have been the case, the record is to the contrary. Whether LiveOnNY believed it had a hold on the transfer of the body or not, the fact is that it did not. (PACER 183, ex 2, ME records page 9). Of course, even if it did, the hold would not have prevented the plaintiff's access to the body since, as explained above, LiveOnNY's hold does not do that, is not meant to do that, would not have done that and there is absolutely no evidence in the record that it did do that.

The R&R indicates that it is LiveOnNY's witness's testimony that supports the speculation that LiveOnNY's hold caused a delay in the ME taking possession of the decedent's body. (R&R at pg. 19) But this is error. Although the R&R cites to portions of Ms. Carpini's testimony in this regard, it ignores the fact that throughout the deposition the witness herself, as well as counsel, made abundantly clear, including by answers qualified to limit them "based on the review of the records," that Ms. Carpini has no personal knowledge of the events and was merely testifying as a corporate witness, based entirely on the LiveOnNY records. (See virtually every page of her deposition for examples, including PACER 183, ex 8, pgs. 13, 15, 25-27, 30-31, 33, 35-38, 40-42 … 133-136, 141, 151-153, 159, 161-162). The LiveOnNY records reflect

8

that a call to ME was made to release the hold at 7:42 pm. What the LiveOnNY records do not reflect (thus, what LiveOnNY's witness could not testify about), yet what is irrefutably true, is that by the time LiveOnNY called to "release" the hold, the ME already had possession of the body. (PACER 183, ex 2, ME records page 9).There was no hold by then. There hadn't been one for hours. So regardless of what LiveOnNY's subjective belief may have been, as reflected in its records and thus as in the testimony if its corporate witness, the evidence is clear that the ME proceeded to "take further action" to transfer and ultimately did transfer the body during exactly the period when the R&R nevertheless concludes that LiveOnNY may have exercised control over the body to prevent exactly that transfer. This portion of the recommendation is thus clearly erroneous, cannot be adopted and must be rejected.

Instead, the evidence, including LiveOnNY's records, recordings of phone calls between LiveOnNY and other parties, and party deposition testimony, clearly establishes that LiveOnNY did not and could not have interfered with the plaintiff's possession of (or access to) the decedent's body, and there is no evidence to the contrary. The body was in the possession and control of the (former co-defendant) hospital and the (former co-defendant) ME (and, possibly, the (former co-defendant) police department. Why the former co-defendants did not permit the plaintiff to see her deceased son is not known and not knowable to LiveOnNY. Why the body was not released until the 25th is not known and not knowable to LiveOnNY. What is known, is shown and is the only relevant fact for determination of the motion now before this court is that LiveOnNY in no way prevented the plaintiff from seeing or taking possession of her son's body. Consequently and contrary to the recommendation of the R&R, LiveOnNY is entitled to summary judgment.

9
255894670v.1

      c. <u>The R&R Misapplies the Parties' Burden, including in Addressing the Absence of Proximate Cause.</u>

For the reasons already outlined, it is evident that the nature of the hold defeats the loss of sepulcher claim. Further, the timing of the hold also defeats the claim. But there is a third, independent ground that conclusively defeats the claim: there is an absence of proximate causation. While the plaintiff hypothesized (but failed to offer any evidence in this regard) and the R&R adopts her position that a potential delay in the ME's autopsy as a consequence of LiveOnNY's hold could have delayed the entire chain of events such that it resulted in a delayed release of the body to the plaintiff, the record does not support this possibility. According to the plaintiff's own complaint, it was not until the 25th that she retained a funeral home and charged it with retrieving the body. That's five days after the ME's autopsy. Even if the ME's autopsy had been delayed as a consequence of the hold (and it wasn't, and there is no evidence that it was, as outlined above), whatever the reasons that the funeral home was not in place earlier and did not retrieve the body earlier have nothing to do with LiveOnNY or its administrative hold. The R&R nevertheless states that "the Court lacks any evidence to conclude, as a matter of law, that the OCME's delay was unrelated to LiveOn's hold" and recommends denial of the motion on this ground. (R&R at pg. 24).

In support of this argument the R&R relies on *Green v. Iacovangelo*, 184 A.D.3d 1198, 1201 (4th Dep't 2020), which is, of course, a New York State case. The R&R's error is plain here. The 4th Department in *Green* applied New York's summary judgment burden-shifting rules to the motion before it. In adopting this standard, the R&R concludes that it cannot be "conclude[d that] that lack of access was due solely to the acts of parties other than LiveOn[NY]" since this would require "undisputed material facts, which have not been presented." (R&R at pg. 25). The R&R goes on to state that "no testimony from Sanders, the

10

OCME, or any other party or witness is offered to indicate that LiveOn[NY]'s hold had no effect on the timing of those decisions or that they would have occurred on the same timeframe regardless." (R&R at pg. 25).

But in reality (and at law), this court must apply the federal rules to determining this summary judgment motion. Thus, the question here is whether there are any "genuine dispute as to any material fact." Fed.R.Civ.P. 56(a); *Kwan v. Andalex Grp.*, 737 F.3d 834, 843 (2d Cir.2013). And the measure of that is whether there is "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. However, the "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment - "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

In this case, on this motion, there is no evidence that it was LiveOnNY's hold that interfered with the family's ability to immediately view and, ultimately, to move, the body. That is the burden which the plaintiff must bear here, and she cannot show (because it is not true) that anything that LiveOnNY did caused the hospital staff (or the police on site at the hospital) to deny her access to the her son's body or that the release of the body from the morgue (many days later) was delayed because of LiveOnNY. There is simply no evidence to establish that connection. The *only* evidence, laid bare by LiveOnNY, is that, with the ME's permission, the body was maintained at the hospital until 10:00 am, during which time LiveOnNY in no way prevented the family from viewing the body or retaining a funeral home to transport it elsewhere. As a matter of fact, any action of LiveOnNY is simply not shown on this record to be the cause of what transpired.

Consequently, the R&R's recommendation as to causation must also be rejected and summary judgment must be granted.

**B.     The R&R Mis-States the State of the Law in New York with Respect to the Loss of Sepulcher Claim**

The R&R is mistaken on the law. LiveOnNY argued (and continues to maintain) that in this case involving a state law tort claim of loss of sepulcher, there is no precedent for imposing liability on a defendant that never possessed the body with which interference is claimed. Imposing liability on LiveOnNY here, where it is undisputed that it never had possession of the body would thus be, by definition, unprecedented. The possibility of liability here would mean that a party that does not possess the body may be required (at the risk of tort liability) to ensure that *another* permit the family access to the body. There exists no New York case that has permitted the doctrine to reach this far, and it would be error to enlarge the doctrine in this way.

What appears to be lost in the R&R analysis is the nature of the hold in this regard; LiveOnNY's hold, when in place, delays physical transfer of the body from one entity (the hospital) to another (the ME), but it does not direct the transfer of the body to LiveOnNY and it does not speak to who else may access the body while it is on either end of the transfer. None of the cases on which the R&R relies for a contrary proposition supports its conclusion that LiveOnNY "misapprehend[s] the tort." (R&R at page 12). To the contrary, in all of the cases on which the R&R relies, the defendant had possession of the deceased.

In *Stanley v. City of NY*, 71 Misc.3d 171, 177 (Sup. Ct. NY County, December 23, 2020) the ME *had* and *then released* the body to the decedent's family (over the decedent's directive to release it to his partner). The R&R is correct that it was the wrongful release of the body that gave rise to the potential for liability, but it remains the fact that the defendant had physical possession of the body and was in a position to determine who should receive it – and it was in that way that it was even possible for it to erroneously release the body to the wrong recipient.

12

The R&R contains an error on the facts of the *Shepard* case which involved a death at the defendant's premises. *Shepherd v Whitestar Dev. Corp.*, 113 A.D.3d 1078, 1079 (4th Dep't 2014). The decedent was believed to have fallen through the trash chute at the premises, into the compactor and died. The body was never found. The building's owners and manager as well as the company that provided the trash compactor were all sued. Contrary to the R&R's conclusion that "the property owner and mangers never did" (R&R at pg. 14) have possession of the body, this is simply not true. The decedent fell into the compactor at the defendant owner's and managers' premises. While the defendants may not have known it, the body was in their possession. The interference claim arose from the defendant's refusal to allow the family to investigate the whereabouts of the body. Once again, the defendants were only in a position to face the potential for liability because they did, at some point, possess the body.

The R&R also mis-states the facts of *Lando v. State*, 39 N.Y.2d 803 (1976) in a similar manner. In *Lando* too, unbeknownst to the defendant, the decedent died on the defendant's premises. Thus, as a matter of fact the defendant *did* have possession of the body. Therefore, the factual predicate for interference with the right of sepulcher existed and so did the possibility of liability for its breach. *Mens rea* being utterly irrelevant to the tort, a defendant's awareness of its possession of the body is not determinative. What matters is that the defendant did actually have (i.e., possess) the body.

Here, at most what can be said is that the situation is the reverse - LiveOnNY's records reflect that it may have believed that it still had a "hold" on the transfer of the body from one entity to another, but in fact it did not (though, again, the "hold" would not prevent the family's access). Reality is what matters and in the same way that the defendant in *Fox v. Mark*, 181 A.D.3d 560 (2d Dep't 2020) who never had possession of the body could not, as a matter of law,

13
255894670v.1

be liable for loss of sepulcher, so too here the absence of possession requires that LiveOnNY be granted summary judgment.

*Rugova v. City of NY*, 132 A.D.3d 220 (1st Dep't 2015) belongs to the "failure to notify" set of loss of sepulcher cases, which are slightly different in that they involve not actively keeping the family from the body but the extraordinary duty to inform the family that the decedent is dead and that they have a right to possess the body. In any case, the R&R is mistaken in stating that this case did not involve the defendants' possession of the body, as the defendants were the police officers and ME who had in fact investigated the accident scene, controlled that scene and possessed that scene, along with the body.

With respect to *Gutnick v. Hebrew Free Burial Soc'y for the Poor*, No. 509579/15, 2019 WL 3070839, at *1 (Sup. Ct. June 28, 2019), the R&R again makes a factual error. The defendant was the one who removed the body from the home after the decedent passed (and sometime before the body was mixed up with another). The defendant absolutely did have possession of the body at some point. Unlike LiveOnNY.

Thus the R&R is mistaken in claiming that precedent exists for the proposition that even absent actual possession of the body, liability for interference with the right of sepulcher can be had.

**C.    The R&R is Correct that LiveOnNY did not do an Autopsy and that there had been No Organ or Tissue Recovery**

The R&R does correctly inform this court that LiveOnNY did not do any autopsy (the ME does that), authorized or otherwise, and that LiveOnNY did not recovery any organs or tissues for donation from the decedent. (R&R at pg. 27). Contrary to the recommendation of the R&R, however, these facts, together with the objections laid out above, require that the

14

erroneous portions of the R&R be rejected and that LiveOnNY's motion be granted in its entirety.

## Conclusion

For the foregoing reasons, this court must reject the Report and Recommendations (ECF No. 191), and grant LiveOnNY's motion for summary judgment, and order any different or further relief that this court deems just and proper.

Dated:    June 29, 2021
              New York, New York

Respectfully submitted,
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: _____
Judy C. Selmeci (JS3915)
*Attorneys for Defendant*
LiveOnNY
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
Judy.Selmeci@WilsonElser.com
File No. 12946.00010

To:    By email to latisha.sanders999@gmail.com and
       by first class mail and certified mail, return receipt requested
       Latisha Sanders
       Plaintiff, pro se
       131 Broome Street
       Apt. 19F
       New York, NY 10002

255894670v.1